# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 2, 2023

Lyle W. Cayce
Clerk

No. 21-60634

Louis Gonzalez, *also known as* Carlos Ramos Sanchez,

*Plaintiff—Appellant*,

*versus*

Shawn R. Gillis; Stanley Crockett; Chad Wolf; William Barr,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 5:20-CV-104

_____

Before Clement, Graves, and Higginson, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:[*]

Louis Gonzalez, an immigration detainee, alleges that the warden of a privately operated detention center and three former federal officials violated his rights by restricting his use of the LexisNexis database. After the district court *sua sponte* dismissed Gonzalez's claims, he appealed. We agree with the district court that Gonzalez's claims for injunctive relief are moot and his

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-60634

other claims are inadequately pleaded. However, we conclude that the district court erred in dismissing Gonzalez's claims with prejudice when he had not yet been given an opportunity to amend his complaint to allege his best case. Therefore, we REVERSE and REMAND for the district court to enter a new order of dismissal.

I.

A.

When Gonzalez filed his complaint on April 16, 2020, he was detained at a private facility in Washington, Mississippi (the Washington facility), which contracts with the federal government to house immigration detainees.[2] The complaint asserts that Gonzalez and other detainees "are challenging their prolonged immigration detention . . . through habeas corpus petitions." On March 20, 2020, the Washington facility allegedly changed "the LexisNexis law program . . . installed [on] the law library computers" by removing "federal and immigration cases." Gonzalez alleges that those cases are "vital for the detainees['] defense" and that the removal of those cases is therefore "hindering" him and other detainees from "prepar[ing] their cases . . . to challenge effectively the prolonged detention they are suffering." In addition, the Washington facility allegedly disabled the "right click" button on mice in the library, which kept detainees from copying and pasting and forced them "to type long paragraphs of law into their allegations."

Gonzalez's complaint includes four causes of action against the warden of the Washington facility, the Director of the New Orleans Field

---

[2] Gonzalez's complaint refers to this facility as the "Adams County Detention Center." The federal defendants' brief calls it the "Adams County Correctional Center," and the warden's letter brief calls it the "Adams County Correctional Facility."

No. 21-60634

Office for Immigration and Customs Enforcement (ICE), the Secretary of the Department of Homeland Security, and the Attorney General of the United States. He brings a claim under 42 U.S.C. § 1983 alleging that the defendants violated his federal constitutional "right of access to the courts," claims under 42 U.S.C. § 1985(2) and (3) alleging that the defendants "conspired to interfere with [his] due process right of access to the courts," and a state-law claim for intentional infliction of emotional distress (IIED). Gonzalez seeks declaratory relief and an injunction "immediately providing [Gonzalez] and the class he represent[s], with the part of the LexisNexis program that was removed[,] . . . allow[ing] the . . . right click [button] to copy and paste, and prevent[ing] the [d]efendants from removing or modifying the system without consulting plaintiff . . . for any removal or modification of the computer system that may hamper [Gonzalez] and the class he represent[s] [from] . . . present[ing] [pro se] claims in courts." He also seeks $150,000 in damages.

## B.

In July 2020, a magistrate judge directed service on the defendants. The federal-officer defendants moved to dismiss the case, Gonzalez filed an opposition brief, and then Gonzalez moved to amend his complaint. In December 2020, the federal-officer defendants filed a response to Gonzalez's motion stating that they did not object to the amended complaint, and the warden filed an answer to the amended complaint.

Five months later, the magistrate judge *sua sponte* recommended that the district court dismiss the case for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). The report and recommendation (R. & R.) construed Gonzalez's § 1983 claims as arising under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and recommended dismissing those claims against all defendants in their official capacities.

With respect to Gonzalez's individual-capacity *Bivens* claims, the R. & R. did not consider whether *Bivens* should be extended to access-to-courts claims and instead found that Gonzalez had not adequately alleged that the defendants caused him to lose a nonfrivolous claim.  The R. & R. recommended dismissal of Gonzalez's § 1985(2) and (3) claims because he failed to adequately allege a conspiracy and recommended dismissal of his § 1985(3) claim because he did not "mention his race" in the complaint.  And the R. & R. found that Gonzalez had not adequately alleged the elements of an IIED claim under Mississippi law.  Finally, the R. & R. concluded that Gonzalez's claims for injunctive relief were moot because he had been transferred out of the Washington facility.  The R. & R. recommended that all these claims be dismissed with prejudice.  Because the magistrate judge found that Gonzalez's proposed amended complaint did not remedy the pleading deficiencies identified in the R. & R., the magistrate judge also recommended that the district court deny Gonzalez's motion to amend his complaint.

After Gonzalez failed to timely file objections to the R. & R., the district court adopted the R. & R. and dismissed the case with prejudice. Final judgment was entered on July 9, 2021.  Eleven days later, Gonzalez filed objections to the R. & R., and two days after that, he moved for relief from the district court's final order under Federal Rule of Civil Procedure 60(b), arguing that his objections were timely.  On August 11, 2021, he filed a notice of appeal.

On September 14, 2021, the district court overruled Gonzalez's objections.  Although the district court concluded that the objections were untimely, the district court still reviewed de novo those parts of the R. & R. to which Gonzalez had objected.  On de novo review, the district court again adopted the R. & R.  Separately, the district court issued an order denying Gonzalez's Rule 60(b) motion.

## II.

Dismissals under § 1915(e)(2)(B)(ii) for failure to state a claim are reviewed de novo. *See Legate v. Livingston*, 822 F.3d 207, 209 (5th Cir. 2016). As in the context of a Rule 12(b)(6) dismissal, we "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff[.]" *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018) (citation omitted); *see Legate*, 822 F.3d at 209. To survive dismissal for failure to state a claim, a complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, we need not accept "legal conclusions" as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "We hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, but pro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam).

## III.

Gonzalez's access-to-courts claims under *Bivens* are not adequately pleaded.

To begin, Gonzalez argues that the district court erred in dismissing his *Bivens* claims against the federal-officer defendants in their official capacities because sovereign immunity does not bar these claims.[3] But under

---

[3] Gonzalez does not appear to challenge the district court's dismissal of the *Bivens* claims against the warden in his official capacity because, as Gonzalez asserts, "he is not suing [the private facility operator] in contract with the federal government," but rather is "seeking recovery from . . . [c]ustody [o]fficers in their individual capacities." So Gonzalez has abandoned this claim on appeal. *See United States v. Arviso-Mata*, 442 F.3d 382, 384

our caselaw, *Bivens* "provides a cause of action only against government officers in their individual capacities." *Affiliated Pro. Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999) (per curiam); *accord Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1294 n.12 (5th Cir. 1994). In any event, Gonzalez's argument appears to concern the availability of injunctive relief against federal officials acting in their official capacities, not a damages remedy under *Bivens*. Therefore, we affirm the district court's dismissal of these claims.

Next, Gonzalez argues that he adequately pleaded an access-to-courts claim against the defendants in their individual capacities because they deprived him of an adequate law library and acted "with malicious intent, without a penological reason." [4] But neither the allegations in the complaint nor these alternative legal theories state an access-to-courts claim.

There are two types of access-to-courts claims. Forward-looking claims allege "that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time," and backward-looking claims allege that official action has "caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief." *Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir. 2019) (quoting *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002)). There are at least two elements of a forward-looking claim: the plaintiff must "identify a nonfrivolous, arguable underlying claim"

---

(5th Cir. 2006) (describing waiver doctrine). Gonzalez has also abandoned his § 1983 and IIED claims.

[4] Gonzalez raises additional arguments about qualified immunity and whether *Bivens* should be extended to access-to-courts claims. Because the district court did not rely on qualified immunity or the lack of a *Bivens* cause of action in dismissing this case, we need not reach these arguments.

and "the official acts frustrating the litigation." *Christopher*, 536 U.S. at 415; *see Broudy v. Mather*, 460 F.3d 106, 120-21 (D.C. Cir. 2006) (describing these elements). The requirements for a backward-looking claim are more demanding. In addition to pleading a nonfrivolous underlying claim and an official act that frustrated the litigation of that claim, the plaintiff must identify "a remedy that is not otherwise available in another suit that may yet be brought." *Waller*, 922 F.3d at 602 (quoting *United States v. McRae*, 702 F.3d 806, 830-31 (5th Cir. 2012)).

Gonzalez's complaint does not adequately allege an access-to-courts claim of any kind because it does not "identify a nonfrivolous, arguable underlying claim" that is being or was frustrated by the defendants' acts. *Christopher*, 536 U.S. at 415; *see also DeMarco v. Davis*, 914 F.3d 383, 388 (5th Cir. 2019) (affirming dismissal of backward-looking claim where plaintiff "has not identified any actionable claim that he would have raised"). Gonzalez alleges that the defendants' conduct is "hindering [his] ability . . . to challenge effectively [his] prolonged detention" through a habeas corpus petition. But Gonzalez provides no factual details about his allegedly prolonged detention or the nature of a habeas claim he would bring to challenge it, and so he fails to allege a nonfrivolous and arguable habeas claim. Moreover, Gonzalez alleges that he is already challenging his prolonged detention through a habeas corpus petition, and it is not possible to discern from his pleadings how the defendants' conduct has frustrated that habeas litigation in any way. *See Barbour v. Haley*, 471 F.3d 1222, 1226 (11th Cir. 2006); *Stokes v. Gehr*, 399 F. App'x 697, 699 (3d Cir. 2010) (per curiam) (affirming dismissal of forward-looking access-to-courts claim where plaintiff failed to demonstrate that underlying habeas petition would be viable); *see also Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (per curiam) (finding no record evidence of actual injury on summary judgment where plaintiff successfully filed complaint); *McBarron v. Fed. Bureau of Prisons*, 332 F.

App'x 961, 964 (5th Cir. 2009) (per curiam) (affirming dismissal of access-to-courts claim for failure to state a claim where record showed plaintiff had successfully filed a complaint); *Vetcher v. Barr*, 953 F.3d 361, 370 (5th Cir. 2020) (finding no due process violation from denial of access-to-courts, in context of immigration petition, where litigant secured "intermittent successes throughout the course of his pro se efforts," even though litigant argued that he did not win on a claim for which legal materials were unavailable).

On appeal, Gonzalez argues that the district court erred in dismissing these claims because the law library is inadequate and the defendants acted willfully. But there is no "abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). For Gonzalez to have been denied access to the courts, he must allege that he has a nonfrivolous, arguable underlying claim. *See Christopher*, 536 U.S. at 415. Because he has not done so, the district court correctly dismissed these claims.[5]

## IV.

The district court also correctly dismissed Gonzalez's claims under § 1985(2) and (3) because he failed to adequately allege a conspiracy.

"The first part of § 1985(2) proscribes conspiracies that interfere with the administration of justice in federal court, and the second part proscribes conspiracies that interfere with the administration of justice in state court." *Daigle v. Gulf State Utils. Co., Loc. Union No. 2286*, 794 F.2d 974, 979 (5th Cir. 1986) (footnote omitted). Relevant here, § 1985(3) proscribes

---

[5] To the extent that Gonzalez asserts in his brief that the defendants have violated equal protection principles by providing "alien immigrants" with inadequate law libraries compared to those available to non-alien federal prisoners, the complaint does not bring an equal protection claim or include these allegations, and we will not consider them for the first time on appeal. *See Hannah v. United States*, 523 F.3d 597, 600 n.1 (5th Cir. 2008).

conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987). So, to bring a claim under any of these provisions, a plaintiff must allege a conspiracy.

Gonzalez's complaint does not "contain sufficient factual matter, accepted as true," to state a conspiracy claim "that is plausible on its face" with respect to any of the named defendants. *Iqbal*, 556 U.S. at 678 (citation omitted). At most, Gonzalez alleges that the Director of the New Orleans Field Office "is responsible for the draft of policies applicable to detainees at the [Washington facility]," that the Washington facility "personnel changed . . . the LexisNexis law program," and that after the detainees complained to the Washington facility personnel, they "were informed that ICE had ordered such change." The complaint does not allege that the Director or any other defendant drafted a policy to change the Washington facility library, that the change to the Washington facility was the result of a policy as opposed to a discrete decision, that the Director or that any other defendant ordered the change to the Washington facility, or that the Director or any other defendant did so as part of a conspiracy. Without further factual allegations, we cannot "infer more than the mere possibility" that any defendant conspired with anyone to interfere with the administration of justice in any court or deprive Gonzalez of equal protection. *Id.* at 679. And Gonzalez's allegations that the defendants "conspired to interfere with [his] due process right of access to the courts" do not state a claim because such a threadbare recital of the conspiracy element of a cause of action under

No. 21-60634

§ 1985(2) or (3), supported by a conclusory statement that a conspiracy exists, does not suffice.[6] *Id.*

V.

As the district court concluded, Gonzalez's claims for injunctive relief are moot.

Article III of the Constitution gives us the authority to adjudicate "Cases" and "Controversies." "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (cleaned up). When a detainee seeks to change the conditions at a particular institution, his transfer out of that institution generally renders his claims for injunctive relief moot unless he shows "either a 'demonstrated probability' or a 'reasonable expectation' that he would be transferred back to [the institution] or released and reincarcerated there." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).

––––––––––––––––––––––––––

[6] Race- or class-based animus is required to bring a claim under § 1985(3), *see Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *United Brotherhood of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 834-35 (1983), and the second part of § 1985(2), *see Daigle, v. Gulf State Utils. Co., Local Union No. 2286*, 794 F.2d 974, 979 (5th Cir. 1986); *Slavin v. Curry*, 574 F.2d 1256, 1262 (5th Cir. 1978), *overruled on other grounds by Sparks v. Duval Cnty. Ranch Co.*, 604 F.2d 976 (5th Cir. 1979), but not the first part of § 1985(2), *Kush v. Rutledge*, 460 U.S. 719, 726-27 (1983). In *Rayborn v. Mississippi State Board of Dental Examiners*, we explained that a "conspiracy must be race-based to state a cause of action for violation of § 1985," 776 F.2d 530, 532 (5th Cir. 1985), and we have repeated this assertion in some later cases. *See, e.g.*, *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987); *Cantú v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019). However, because we conclude that Gonzalez's § 1985 claims fail on the conspiracy element, we need not decide today whether *Rayborn* binds us or whether allegations of a conspiracy based on what Gonzalez calls "alien immigrants" would state a claim under the second part of § 1985(2) or § 1985(3).

No. 21-60634

Although Gonzalez's complaint seeks an injunction with respect to conditions at the Washington facility, he has been transferred to a different detention center, and he does not point to any evidence of a demonstrated probability or reasonable expectation of transfer back to the Washington facility or reincarceration there. Gonzalez's claims for injunctive relief as to the Washington facility are therefore moot. *See id.*

Instead of defending his claims as to the Washington facility, Gonzalez now argues that he seeks an injunction with respect to a broader government policy that affects multiple detention centers, including the facility where he is currently detained. But even construing the complaint as requesting any injunctive relief necessary to give Gonzalez access to the legal resources he demands, Gonzalez's complaint does not adequately allege the existence of a policy affecting detention centers other than the Washington facility. The complaint alleges that Gonzalez is detained at the Washington facility, that Gonzalez "and several other detainees" had filed habeas corpus petitions, that Washington facility personnel changed the LexisNexis program on ICE's orders, and that the right-click button on computer mice was disabled under orders from ICE or the Washington facility. Nowhere in the complaint does Gonzalez allege any changes in law library resources at detention centers other than the Washington facility or a policy that affects other detention centers. Indeed, on appeal, Gonzalez asserts that until about June 2021—more than a year after he filed his complaint—he "believed that the limitation in the law library existed just at [the Washington facility]."

For those reasons, we affirm the dismissal of Gonzalez's claims for injunctive relief.[7]

_____

[7] Gonzalez purports to bring his § 1985(3) claim on behalf of "a class of people [he] represent[s], [who] are detained under prolonged detention by ICE, and are challenging their prolonged detention through habeas petitions," and he seeks relief, including an

VI.

Construed liberally, Gonzalez's brief argues that the district court erred in dismissing his case with prejudice. We agree.

When a district court dismisses a pro se complaint, it should do so "without prejudice in order to allow the plaintiff an opportunity to file an amended complaint," unless "the plaintiff has been given adequate opportunity to cure the inadequacies in his pleading or if the pleadings demonstrate that the plaintiff has pleaded his best case." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 423 (5th Cir. 2017) (per curiam) (cleaned up); *see Hale v. King*, 642 F.3d 492, 503 (5th Cir. 2011) (per curiam) ("[D]istrict courts should not dismiss *pro se* complaints pursuant to Rule 12(b)(6) without first providing the plaintiff an opportunity to amend, unless it is obvious from the record that the plaintiff has pled his best case."). Neither condition is met here.

To start, Gonzalez has not had an adequate opportunity to cure his pleading deficiencies because his proposed amendments were not drafted with the benefit of the R. & R. or the district court's dismissal order. As we explained, Gonzalez moved to amend his complaint after the federal

───────────────

injunction, on behalf of this class. Although a class action generally "becomes moot when the putative representative plaintiff's claim has been rendered moot before a class is certified," that rule does not apply "where the named class action plaintiff's claim becomes moot *after* the class was certified," *Fontenot v. McCraw*, 777 F.3d 741, 748 (5th Cir. 2015), or where a class certification motion was "diligently filed and pursued at the time the named plaintiff's claim [became] moot" and the defendants had mooted the named plaintiff's claim and could "pick off successive plaintiffs' claims," *id.* at 750-51 (cleaned up). Gonzalez does not argue that his claims for injunctive relief are live because they were brought as a class action, and so he forfeited this argument on appeal. *See Arviso-Mata*, 442 F.3d at 384. Regardless, these exceptions to mootness are not available here because Gonzalez never moved for class certification. *Cf. Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 492 & n.1 (5th Cir. 2020) (per curiam) (declining to find class action moot where plaintiff had moved to certify class).

defendants filed motions to dismiss.  In the R. & R., the magistrate judge recommended denying leave to amend because Gonzalez's proposed amendments would fail to state a claim, and it appears that the magistrate judge decided to recommend dismissal with prejudice based on the insufficiency of Gonzalez's proposed amended complaint.  But because Gonzalez filed his motion to amend less than a month after the defendants' filed their motions to dismiss and more than five months before the R. & R. issued, Gonzalez's proposed amended complaint seems to have been prepared in response to the defendants' unadjudicated motions—not the R. & R. that the district court adopted.  And Gonzalez may not have grasped the extent to which his factual allegations fell short from reading the defendants' motions, upon which the district court never ruled.    Under these circumstances, "it is not clear that [Gonzalez] amended his complaint with a sufficient understanding of the inadequacies in his original pleading." *Alderson*, 848 F.3d at 424.

Further, Gonzalez's objections to the R. & R. include new factual allegations that show that he has not pleaded his best case.  For example, Gonzalez's objections state that a "Deportation Officer" told him that under "ICE's policy[,] detainees are not allowed to have access to a complete law library as the one that is provided to [f]ederal [p]risoners," that the Washington facility once had access to materials for federal prisoners because the facility was previously a federal prison, that "every ICE detention facility nationwide is provided with the same law material," that the facility to which Gonzalez was transferred also had an "incomplete law library," that ICE limits law library access to cases about immigration, even though detainees are "held in a prison-like environment" and have claims "seek[ing] redress for constitutional violations," that Gonzalez prepared his papers in this case using "a flash drive belonging to [an]other detainee coming from federal prison," and that he would amend his complaint to include a claim that the

defendants' policy violates equal protection principles.  At the very least, these allegations would likely save Gonzalez's claims for injunctive relief from mootness.  And Gonzalez's proposed amended complaint names additional John Doe defendants who issued "the order to modify the law library" and who "created a policy" to modify the library.  With additional allegations about the purported conspiracy or a nonfrivolous, arguable underlying claim that the defendants frustrated, Gonzalez may yet be able to state a § 1985 or access-to-courts claim.

In sum, "the general rule that dismissal should be without prejudice applies" in this case.  *Alderson*, 848 F.3d at 424.  We REVERSE and REMAND for the district court to enter a new order dismissing this case without prejudice.